Good morning, Your Honors, and may it please the Court, Brianna Fuller on behalf of Tanya Browser Morris. Ms. Morris was sentenced based not on what she did, but on what the Court presumed that she did. Her sentencing took several wrong turns. One, when the Court presumed that there were victims of the offense that simply didn't exist, and two, when the Court ruled on the lost amount objection without really knowing what Ms. Morris' involvement was in the SBA loan. For these reasons, we are requesting a new sentencing hearing, and as this Court has said in Tapia, there's little reason not to do so in these circumstances. There were two significant procedural errors that I'll start with and that merits a second look at this case. The first related to the victims of Ms. Morris' offense. It's clear from the transcript that the District Court believed that there were Katrina victims who did not receive funds as a direct result of Ms. Morris' fraud, individuals whose houses were foreclosed or who were out on the street. But it's clear that there were no such Katrina victims who did not receive benefits because of Ms. Morris' fraud. And it doesn't appear that the government is disputing that. The government argues instead that the Court had in mind more indirect losses, things like that the checks took longer to cut. Well, don't you think that's a fair reading of this transcript, that the judge, Judge Wright, was looking at it as Katrina victims were the indirect victims of this because after all, there's a limited pool of funds that can go to help the actual victims of the Katrina hurricane. So if to the extent somebody gets them who doesn't deserve them, that's indirectly harming someone who was an actual victim. I think it's clear that there weren't individuals who were Katrina victims who did not receive funds. Now, I understand that in the broad sense there are a limited number of things the U.S. government can do with its money, but there were continuing allocations of money from Congress to ensure that the Katrina victims received their funds, and... But she took advantage of the fact that there were victims. If there weren't true victims of Katrina, this whole scam would never take place. So she is looking, ah, here's an opportunity. I'm just going to pretend I'm one of these victims. I think that's true. She didn't dispute that she took advantage of the situation where the government was not closely verifying claims. That's different than saying that there's somebody who is out on the street as a direct result of Ms. Morris' fraud. And I think that's what the Court had in mind. She said there's a limited fund for this hurricane, and that that's what the Court was considering. And I think that view of having these direct victims who are out on the street because of Ms. Morris' fraud, that wasn't true, and that's something the Court said that it based its sentence on. And for that reason, I think the Court procedurally erred. You know, the Court was very clear that she was talking about the victims of this fraud, not about, as the government has said. What was the range for her actions? The range, the defense believed the range was 18 to 24. That would be without the SBA loan. The range that the Court settled on was 24 to 30. The range the probation officer had suggested was 30 to 37. And she gets 37. And she got 37. There's no place in here that the number of victims would have defined any points that she would have picked up, right? This is really an impressionistic thing on the part of the district court rather than something where he's made a miscalculation based on the number of victims. Exactly. This isn't a guideline calculation issue. This is a procedural reasonableness issue. But Cardi says it is procedural error if the Court bases its sentence on incorrect facts, and I think that's exactly what happened here. We did raise a second procedural reasonableness question, which was whether the Court truly took the change of guideline into effect. The Court had stated before sentencing that it intended to follow the probation officer's recommendation, which was a within-guideline sentence. And it's important to realize the probation officer had said that a within-guideline sentence was appropriate because the aggravating facts about Ms. Morris' case were already taken into account by the guidelines, the things like her criminal history, the amount of loss. Those were all facts. The probation officer said a within-guideline sentence is appropriate because these aggravating facts are taken into account by the guideline itself. The government, too, requested a within-guideline sentence. Okay. I'm sorry. Did the government request something different than the PSR? The PSR had come out at a range of 30 to 37. Right. It requested a high-end 37 months. Okay. The government, because it said that the SBA loan should not count or that at least as part of its plea agreement it had agreed to recommend that, it came out at a at the range being 24 to 30. Okay. And it requested a 24-month sentence. So it requested a low-end sentence of a different guideline. The probation office recommended a high-end of a 30 to 37 month. Now, the Court was thinking that because of her prior criminal activities that she hadn't learned a lesson. And part of his thinking about the sentence he imposed was, well, maybe she can learn a sentence, learn something if we give her a high-enough sentence. Now, is that appropriate? That's something the Court can certainly consider. That's a 35-54. Well, he certainly did, and that's certainly in the dialogue and the colloquy that went on. You can see that that was clearly what he had in mind. And I guess if I were a judge sitting there and looked at what she had done before and what she's up to now, I would think this was quite an appropriate sentence. I agree that it's something the Court could consider. I think what's concerning here is the language the Court used to do it. It said that it had decided before the hearing that that 37-month sentence was appropriate. The guidelines had changed in the meantime, but no other facts had come to the Court's attention that would say that, you know, before the court – before the hearing, the Court had decided that a within-guideline sentence was appropriate. Nothing new came to the Court's attention that would lead it to believe that an above-guideline sentence was appropriate. I don't see what's wrong with that. I mean, when I used to – and I still do sentencing from time to time. I spent a lot of time before preparing and thinking and going through the guidelines and the PSR and everything. And I come up with what I think is appropriate and then go listen to argument because I wouldn't want to do it, you know, on the fly. So I don't see what's wrong with that. I think what's wrong, again, is the fact that he had – he gave the impression that he had decided what the sentence should be before the hearing, and then it's not clear that he fully took into account what the guideline – the change in the guideline range. He said, well, the guidelines is – that's something we have to go through. But before the sentence, before the hearing, I decided separate and apart from the guidelines that 37 months was appropriate. I understand the Court's point, and certainly we understand that with this volume of sentencing documents, you're going to do some prep ahead. But the concern is that if the Court had decided what the sentence was and didn't properly account for the fact that the guideline range had changed, that's a problem. I'd like to reserve the last two minutes of my time. All right. Thank you.  Good morning. May it please the Court. David Herzog on behalf of the United States, and I was counsel in the district court as well. To address the questions the Court has already raised, the original PSR was 30 to 37 months. The government, in its original sentencing papers, argued that the SBA loan, because the mother was repaying it, ought not to – ought to be taken into consideration under the restitution grounds, because it's – in the government's view, as it was the Court's view as well, the victim is the government, and restitution ought to be paid to the victim. And in this case, the mother was in the process of paying back the loan. That was the government's rationale for arguing the low end without the SBA loan. But that doesn't mean it was plain error for the Court to include the SBA loan based on the facts before it, the defendant's own admissions, and the relevant conduct analysis. So I'd like to delve into the facts and give some context for the facts, because in terms of – in terms of the defendant's own statements, when the agent went to interview the defendant when she was in jail on a different charge, she admitted that – that the conduct was her own, and the losses were her – losses were her fault, and that she was going to pay back all of the money, including the losses attributed to the loans to her sister and her mother. And I would just note for the Court that during that interview, the defendant, then the case agent, and then later the probation officer and defense counsel at the sentencing, and the defendant at her sentencing, all were equating the FEMA loans and the SBA loans. Now, on appeal, and I give Ms. Fuller a lot of credit for it, there's this distinction being drawn between the SBA loan and the FEMA loan due to out-of- record sources about them coming from different pots of money. But the District Court had before it only evidence that in general the FEMA loans and the SBA loans were the same thing, which was relief from Katrina that was fraudulently begotten by this defendant, sometimes in her own name, sometimes in the name of her sister, and sometimes in the name of her mother. So in that regard, the factual context of the defendant's admissions are clear that we were always, everyone was always talking about the FEMA loans and the SBA loans as part and parcel of the same thing, which is what the Court ultimately ruled. And I would note the defendant's own statements when she said, and this is at paragraph 28 of the PSR, I am the reason for this. She never said, I am the reason for the FEMA fraud, but the SBA loan, that's my mom. She never said that. And in fact, at her own allocution, she said at the sentencing hearing, and this is at record 30, I believe I did everything I did. I did it. I would also note for the Court that defense counsel at the sentencing hearing said and noted that the FEMA loans and the SBA loans were in fact within the same realm of actions as the other losses. So with regard to the factual underpinning of the statements about the two loans, the SBA loan and the FEMA fraud both being part and parcel of the same scheme, that was what was before the district court. Now, with regard to the Court's statement about the true victims of the crime, I would urge the Court to look at Excerpt of Records 6 and 29. In both cases, the Court affirmatively articulates that the victim of the crime was the government. It has to be the case at sentencing that the Court can engage in a discussion and dialogue with defense counsel. And here, when defense counsel made the arguments about major corporations and sentencing for white and white-collar crimes, the district court has to have the ability to discuss that with the defense counsel. And here, the district court repeatedly noted that the victim was the government. And I think the Court, as reflected by the questions of the Court, the Court is right on that, in fact, there were. The Court is acknowledging the indirect victimhood of the other Katrina victims, the bona fide victims. With regard to Judge Bidey's question, I would note that there would have been an enhancement for multiple victims if the Court were truly saying that the victims of this crime were the bona fide victims. Under the sentencing guidelines, there's a big increase if there are a large number of victims. But here, of course, because Judge Wright was not articulating that the victims were the bona fide victims, he didn't impose that enhancement, nor was it on anybody's mind. On the loss calculation and the points assigned for the loss in the PSR, when the loan was combined with the FEMA – yeah, when the SBA loan was combined with the PSR, did they subtract the amount that had been repaid? Even – I'd point the Court to paragraph 22 of the PSR. The outstanding balance was around $8,400 on a $13,000 loan, but even that $5,000 difference would not have brought it into a different category. It wouldn't have affected the six points in the defense level? That's correct, Your Honor. Okay. And then I would also just note for the Court, in the briefing, obviously, there was a great discussion about the factual basis on which the Court could determine the evidence before the Court as to the loan being part of the FEMA fraud. And I would just note for the Court that in paragraph 9 of the PSR, the Probation Office indicated the things it was relying on in making its determination, which including the plea agreement, the reports of the agent, and the FBI, and other case material provided by the government. And then in paragraphs 22 through 24, articulates what it is that the defendant herself did to assist and facilitate the obtaining of the SBA loan on her mother's behalf, in her mother's name, and, of course, the money went into her mother's account. So I don't – I think just on the facts, it's pretty clear that the Court did not interfere plainly in determining that the defendant herself was, for relevant conduct purposes, responsible for the SBA loan as well as the FEMA direct loan. If the Court has no further questions, I'm happy to submit. Okay. Thank you. Thank you, counsel. Should I reserve the remainder of my time? No, I don't think you need to. Thank you. Thank you. I just want to make a couple of quick points. The problem with Ms. Morris's statement is that it was clearly a statement made to a FEMA investigator about the FEMA fraud. She's talked specifically about the $2,000 loans, which were the FEMA – which were the amounts she received from FEMA. There's no indication that the SBA loans had been discovered by that point, that they were discussed during that interview, or even that the DHS investigator who, of course, would not be involved in an SBA investigation had asked any questions about that. But there was no objection to paragraph 22, where it says that Morris instructed and helped her mother to complete the SBA form. We did not call out paragraph 22 particularly. Here's what the state of the record is. The defense counsel object to the loss amount enhancement. It said that the facts supporting the SBA loan were not sufficient to support that loan, or to support including that loan in the loss amount. And then specifically said that the probation officer had not said what the quote, reliable information it was relying on was, and that the court, because there was a dispute as to the PSI, the court should need more information about what that reliable information was. So although we didn't particularly point out the paragraph, I wish we had, but we didn't, I think it's clear what the nature of the objection was. It wasn't simply a legal objection. It was to the insufficiency of the facts that undergirded that enhancement. The last thing I want to make clear is that, you know, we don't challenge that the district court understood that the government had suffered a loss here, that the government was a victim. The question, though, is whether the district court believed that there were more direct consequences of Ms. Morris' crime than there actually were. That's the distinction that we're making. We're not saying the government didn't understand that the government was also a victim here. But, counsel, on the un – with respect to paragraph 22, just one last question. Yes. This was a disaster home loan application. Did that disclose an address? I believe it did. Is it the same address in New Orleans that she claimed on everything else? It's not in the record. So, again, we don't know what that SBA loan was about because that – those facts weren't in the record. But she did use – she used a single address in all of the other frauds, her sister, herself, the stolen identity for TLW. My memory is that the number changed, but the address didn't. But, again, the SBA loan is categorically different because it was filled out at a time that Ms. Morris was in jail. Her mother was the person who apparently filled that out. And so it's not clear that that address necessarily would have been the same, just because this series of very quick applications that took place at one point, then five months later there's an application by the mother. It's not clear that the address would have been the same. Thank you. All right. Thank you. Did you – go ahead. If I may, just to clarify some points in the record for the Court. On page 6 of the transcript, I think, is the answer to the question about the argument as to what the defense argued, which was really an argument about restitution, that the government and the defense agreed in the plea agreement because of the nature of the restitution. And then, just to answer a judge's question, I would note that the street address in New Orleans for each of the FEMA applications was Johnson Street and the house number. The number was different. Just the house number was different. Okay. But, yes, that's correct. All right. Thank you very much, counsel. U.S. v. Morris will be submitted. And the next case.
judges: Fletcher, Wardlaw, Bybee